v. Jones Lang LaSalle Americas, Inc. Good morning, Judge Marcus. Good morning, Mr. Court. William Amlong, on behalf of George Amador. Mr. Amador's argument is that the District Court abused its discretion when it refused, indeed without explanation, to admit the statement of its Chief Litigation Counsel to the Equal Employment Opportunity Commission concerning how and why Mr. Amador took the first step to what within nine months would be unemployment. The explanation that was given to the EEOC was not only untrue, but was frankly ludicrous. Are you talking about the in-house counsel? Yes. I mean, this is a man that probably not only has an attorney-client relationship, but a lawyer. The EEOC would think it was biased? Well, when an attorney for a company, in-house or not, makes a representation to the Equal Employment Opportunity Commission, he or she is making a statement to a federal official concerning something with which that federal official is charged with investigating. It is a felony to lie to the EEOC. It's felony to lie to any federal official in, we were talking to him in his or her line of duty. Tell us why those statements were material at all to your client's age discrimination claim. It seems to me the district judge would have been perfectly correct to exclude the statements altogether. Because the statements, Judge Dabena, go to . . . it's a false statement and they go to the pretext argument. If you're going to lie to the EEOC, and then you come in and say, gee, that's not going to work, we'll come up with another story. My client is entitled to have the jury hear what Jones Lang LaSalle's lawyer told the Equal Employment Opportunity Commission about how and why Mr. Amador left his job. And the excuse that they gave made no sense whatsoever. Why should somebody who is 54 years old, making in the mid six figures, ex-wife with Allen Money, new wife with two new babies, and desire for a new house, why is this person going to just say, you know, I'm going to have a job in six months, but this sounds like fun to go fill in on this account. And I'm going to take this job, take this temporary job, even though you've just told me that I'm giving up the job as Global Director of Energy and Sustainability for the worldwide HSBC account, on which I'm making a whole lot of money. And I'm going to do this even though you're telling me that I'm leaving my job now, and there may or may not be any place for me when that job's over. Let me ask a question this way, Mr. Amador. Assume for the purposes of my question that there were things in the position paper that were material and relevant to issues that remained in this case. Is it not also true that there were many things in that position paper that were not relevant to the issues that remained by the time you got to the trial? For example, since only Amador's removal from the HSBC position and subsequent removal from the JLL position were really at issue, the EEOC statement contained other things that had to do with not getting a permanent position with Citi, which had nothing to do with this case, or why he wasn't chosen for any of the other positions he may have applied for. If it had any relevance, it sure wasn't much on those issues, even if there were portions of that that were relevant to issues. So wouldn't it be fair to say that there were, District Court was willing or power to say there's stuff in there that doesn't relate to what's remaining in this case? She certainly would have been well within her authority. Would not have been an abuse of discretion to keep out the whole report on the theory, at least portions of the report, on the theory that there's stuff in there that isn't terribly relevant and might mislead the jury, confuse them about what's really at issue in the case and what's not. And yet you said to her, I want the whole thing in. So she said, no, but I'll let you use it for the purposes of impeaching on the particular areas that were germane and relevant. One, as I understand your question, would it have been an abuse of discretion to keep out the whole report? You wanted the whole report in, and she said no, but you can use portions to impeach. Why was that an abuse of discretion is what I'm asking. Because the report could have been redacted. Did you say to the judge, well, judge, you're right that some of it may not relate directly, but let's redact this report, and we want to only put a portion in? I frankly don't recall, and I don't want to say that I said that. Because as I read this record, as I saw it, you said we're entitled under Chapman to put the whole thing in, and she said no, and then she said, but I'll let you confront, cross-examine, impeach with this, and with this, and with this. Because they do bear on credibility or believability of the witness. The problem with that, your honor, is in the roughly 150 or 200 trials I've done, I've never impeached Tom or Dick with what Harry said. You just can't do it. But she should have let me. I don't know. Why is that so difficult? If Cuomo gets on the stand, and he says, quote, he told Amador he would be spending only half his time on Citi, and said nothing about the HSBC position. But the policy statement said Amador was working, was asked to work full-time on the Citi account. I don't know why you couldn't impeach him with that. Well, I sought to show him, I sought to show Mr. Thummel the letter, and then go back and impeach him. I deal with this on page 11 of my reflection. No, I've read the transcript. I understand. I'm simply saying you were free to confront, cross-examine, and impeach with a statement, even though the statement was signed by the lawyer on behalf of the company, and you were impeaching one of the critical employees involved in this, you know, this fact pattern. And after Mr. Thummel... But we're talking about your claim is the district court abused her discretion by keeping the report out in toto, period. And I said to you, it looked to me like there were sound reasons to the extent you wanted the whole report, why the whole report wouldn't come in, or at least arguably, one could say it's confusing and not relevant to some of the issues. I agree. I think those portions should have been kept out. However, the portion that should... But you didn't say to the judge, or if you did, show me where. As best I can tell, you didn't say, Judge Williams, what I think you ought to do here is allow us to put in A, B, and C as affirmative evidence, even if you keep out D, E, F, G, H, and I. I actually suggested questions that I wanted to ask. Yeah, no, I wasn't... I'm not talking about impeaching questions, which you were free to do. I'm just talking about you said the heart of your argument is that she abused her discretion because she didn't allow you to put the report in. And I'm simply saying there were things in the report that struck me as irrelevant, and if not irrelevant, marginally relevant, and quite confusing. I think there were. I think those things should have been kept out. However, what should have been let in is the statement on page one of the letter that Imador agreed to relinquish his role with HSBC to temporarily manage JLL Citibank, account for Latin America. Relinquish, not temporarily take over. It also said in about the first quarter of 2014, Thummell asked Imador if he would consider working full-time in the city account for Miami until a replacement for, as far as it could be found. Given the uncertain duration of this assignment, Thummell advised Imador that JLL would need to backfill his position with HSBC. On the next page, it states Imador accepted the temporary assignment to city even though there was a risk that no appropriate rule at JLL would be available when his assignment ended. Those portions should have been allowed in. On the letterhead, the other stuff could easily have been redacted. When I attempted to cross-examine Mr. Thummell about that, the judge disallowed me being able to show him the report after he said that he did not recall any of this. I was not permitted to proceed and question him. My time is up on my main argument. I don't know if you have any further questions. Thanks very much. Thank you. May it please the Court. Good morning, Your Honors. I'm Tom Wild. I'll be presenting on behalf of Jones-Ling, LaSalle Americas. With me is my partner, Sadina Montani. Your Honors, this is an evidentiary issue. So obviously, we're talking about an abuse of discretion standard and I think there's a few points of context here that are important for the Court to consider. In that regard, one of them Judge Marcus touched on. The only issue that was left for this jury by the time we got the trial was a single employment action that Mr. Amador was removed from this assignment on HSBC, replaced, and then ultimately terminated. But the discrimination charge that Mr. Amador had filed with the EEOC was much broader than that. It had a race discrimination claim and an age discrimination claim with respect to a host of different employment actions. But accepting all of that is true. District Court could have said you can put in this portion and not that. And that's what Judge Williams did. No, she didn't allow him to put anything in as affirmative evidence. She allowed him to use portions of it for impeachment. She did. Not quite the same thing, is it? It's not. But Judge Williams was faced with that context of this position statement with all of these different employment issues and claims. And what she did is she parsed through it. And she determined are any of these comments that Mr. Amlong was relying upon, are any of them actually contradictory to evidence that was elicited in discovery? She determined that only three of them arguably were. And even for those, she said they were not directly contrary. And she allowed Mr. Amador to put those in as impeachment evidence if he established a proper foundation, which never happened. So this case is unlike Chapman and other cases that Mr. Amador relies upon because Judge Williams did allow use of portions of the position statement that were argued. Right. No, I understand that she allowed him to use the statement in part in order to undermine and impeach the credibility of witnesses like FOMO. All I'm asking is, if he had said to her, I want to put in at least a portion of it as affirmative evidence. It's very different to put something in as affirmative evidence on the one hand, or to use a document for the purposes of impeachment. Very different propositions. Statement may be well suited to impeachment and utterly inadmissible for other reasons. She kept the statement out in whole and allowed him to impeach with some of it. Could she not have allowed him to put in that portion of the position paper that bore upon the issues this jury had to try? She could have. Did he ever ask her to do that? I don't believe that ever happened. And I would also add on that point, Your Honor, and the record shows it. There was a point where defense counsel suggested that they would be willing to put those statements in affirmatively in a stipulation. And Judge Williams also agreed that that might be simpler and easier. But Mr. Amador never did that. So there was that opportunity. It was considered and it was never requested. And ultimately here, you're exactly right. The district court judge has what this court has said is considerable leeway to make these types of discretionary decisions about evidence. Well, the judge in the case, I mean, I look at it this way, she's sitting there watching the trial, deciding what's relevant evidence, what's fair to both sides. And basically, as Judge Marcus puts out, she sort of split the baby with the position deal. She used it on the one hand for impeachment purposes, but not any substantive stuff in it. And she apparently made a determination on what was going on in the trial to exclude it. And I would say that was well . . . For that purpose. That was well within her considerable leeway. And as this court has noted in describing that considerable leeway, even if a different district court judge might have gone the other way, or even if this court looked at it and might have gone the other way . . . The exclusion of that position, employer's position thing, is one of the keys to what his case is all about. He needed it. Judge Williams apparently let it know. But said that he could use it for purposes of impeachment. Right. It's different, as Judge Marcus points out. It is. And my point is that she has the leeway to make that determination. That's part of the trial court judge's discretion. And I don't think on this record you can say that Judge Williams abused that discretion. And on that point, let's look at . . . Discretion. But what I guess I'm getting at is that error. It is not error. It is not an abuse of discretion.  These statements are inconsistent. I will let you use them for purposes of impeachment. It was not excluded altogether. There was still the opportunity to get those statements in front of a jury through impeachment. But that foundation was never established. That never happened. And when you look at the statements themselves, by the way, if you drill down into them, you can't possibly get to a conclusion that there was some substantial prejudicial effect, even if you conclude second-guessing that, okay, maybe Judge Williams should have allowed those in, which I would argue was well within her discretion not to, well within that considerable leeway. If you look at this position statement, the comments that plaintiff urges he should have been able to put in as affirmative evidence, if not the entire position statement, are not inconsistent. And let's look at them. The first grouping relates to what Mr. Amador was told when he was asked to take on this temporary city assignment. Amador argues that the position statement falsely said he was told from the get-go that JLL was going to backfill his job. The position statement doesn't say that. The position statement specifically says that in the beginning, Mr. Thummell told him, we'd like you to split your time between these two roles. The position statement says that. Then it goes on to discuss while they were looking for a replacement, a permanent person for that temporary role, later Mr. Thummell decides he can't handle both of these jobs at the same time. I have to backfill it. That's what the position statement says. That is actually what happened. That's what the evidence shows. There was nothing contradictory about that. The one quibble is that the position statement says that it was Mr. Thummell who told Mr. Amador he was going to backfill the job, and the evidence shows that in fact that communication came from a different manager. But there's no dispute that Mr. Amador was told he'd be backfilled. He even testified and acknowledged on cross-examination that he helped to backfill the role. He interviewed candidates for that role. He recommended people. There was no secret here. That is not a substantial prejudicial effect because it's not even contradictory. The same is true with the other statements in the position statement that Mr. Amador contends were so critical to his case, saying that he accepted the temporary job, even though there's a risk that there might not be a job available. He portrays that as if JLL told him there might not be a position available. The position statement doesn't say that either. It just says he accepted that temporary assignment, even though there was a risk there might not be a position available. And that was true. Virtually every JLL witness who testified, including when Mr. Amador himself testified, explained that they had cycled through countless assignments at this company. That's the way it works. It has all these client accounts. It gains them. It loses them. It shuffles people around. People are moving from assignment to assignment all the time. And there is an inherent risk that there may not be a job available. The record shows that happened with others. So when the position statement said that he accepted that job, even though there was a risk of not having a position available at the end, that was true. And that's what happened, especially when here it was a temporary assignment. There was, of course, a risk there might not be a job available. But the position statement never said he was told that, just that that was the reality. The other one is the statement that Mr. Amador accepted the job because it would give him this client-facing opportunity and experience that he didn't have. Again, Mr. Amador portrays that as a JLS saying that that's why he accepted the job. The position statement doesn't say that either. It just says given his background in engineering, that's true. His prior engagements in technical roles, that's true. The temporary assignment provided him with an opportunity, albeit short-term, to assume a client-facing role. That's true. That might better position him for a future leadership position. That's true. And that Amador had not previously served in senior client-facing roles, which required him to manage the overall client relationship. Mr. Amador quibbles with that and said he had client-facing roles before. But again, the position statement doesn't say that's why he accepted the job. It just says these were the realities of accepting that job. And all of those things were true. So even if this court says it might have gone the other way, as it were, first of all, that's not an abuse of discretion. But secondly, even if this court had gone the other way or a different district court judge might have gone the other way, there's no substantial prejudicial effect by excluding these statements from affirmative evidence. And I was struck by something Judge Marcus said in the prior argument, that a statement from a case didn't have anything to do with the holding. Here, the statements from this position statement that Mr. Amador says were so critical to his case have nothing to do with the fact that the company chose someone else for this HSBC role in the issue that was in front of the jury. They're collateral. There is no substantial prejudicial effect in Judge Williams excluding these or, as she did, allowing him to use them, albeit for impeachment purposes. And again, we offered to put them in affirmatively through stipulation, which Judge Williams agreed was perhaps an easier, simpler idea. And the plaintiff never requested that. So we would ask the court to uphold Judge Williams' discretion and affirm her decision. And unless you have other questions, Your Honors, I have nothing else. Thank you very much. Thank you. Mr. Amador, you have a reserve of five minutes. Thank you. Judge Marcus, what the abuse of discretion was, was to keep out admissible evidence. The admissible evidence here, regardless of whether the statement came in, I asked to and was denied permission to question Ms. Barner, who was present in the courtroom. I thought I heard you to say the heart of your argument was she abused her discretion because she kept the statement out. Under Chapman, she was obliged to admit the statement. Now I hear you to be saying maybe something a little bit different. I just want to be clear as on what the argument is, because when I read the blue brief, I wasn't 100 percent certain, but it looked to me like the thrust of the argument was the abuse of discretion was in keeping the position paper out. The alternative is beyond that, she didn't allow me to impeach with it either, which is a slightly different argument. Are you making the first argument, the second argument, or both arguments? I'm making both. And when I say the statement, I'm talking about not just the physical statement, the piece of paper, but the material contained in the statement. Ms. Barner, who signed the statement, could easily have testified. The fact that she made the statement to the EEOC is relevant under Rule 401. Under 402, relevant evidence is supposed to- When I looked at the blue brief, point one, the trial court abused its discretion by not allowing the plaintiff to introduce defendants patently and demonstrably untrue statements to the EEOC as evidence of pretext. I understood that argument to be that she was obliged to let that statement come in. I don't think you- That was the heart of the argument that I thought you were making, that you couldn't put the document in. I don't think keeping the document out was as harmful as keeping the statements it contained out. And Ms. Barner was there. I asked to- I asked to call Ms. Barner. I was denied that permission. I was denied permission to further cross- to show Mr. Thummel the statement and to question him about it after I established that he had not said these things. But it was the- it was denying me the ability to question Ms. Barner, which sealed the deal. It- it kept the- it kept from the jury information from which the jury could have found that JLL's explanation was pretextual. So I understood the district court ruling. She said that Thummel, quote, can be asked about whether he was aware that a pretextual position was taken by JLL in another proceeding. And she said that you could ask as well about, quote, Amador accepted the temporary assignment at Citi even though there was a risk that no appropriate role at JLL would be available when this assignment ended. And Thummel later testified that he never said anything to Amador about a risk. Court said you could test- you could impeach him about that as well. Um, as well as, uh, the Latin American platform role that Friedel and Milas were considering creating and giving to Amador, the position paper said this plan was scuttled when Stolarski said that if there was enough workflow to justify two positions, one person would not be able to do the job effectively. And the court said that that was a competent area of cross-examination as well. Didn't she say you could ask about those areas? I did. I asked Mr. Thummel about those areas and he said, I don't recall, I don't recall, I don't recall. I then sought to show him the letter to the EEOC and to go back and question him about it and, uh, the judge at that point called us up to the bench and said, where are you going? And I said, I'm going to show this to him and I'm going to ask him about this and if he ever told anybody, if he gave any information about this, if he ever said anything about this, if he has seen this letter before. And at that point she said, well, move on. And I was not allowed to pursue that line of questioning anymore. I did ask to call Ms. Barner and to ask her about these statements. The, um, when I say keeping out the EEOC statements, I meant both the piece of paper and the statements that it contained. I was allowed to introduce neither. The defending material in the Wren statement had been redacted. That wasn't done. The judge kept out everything. I was deprived of putting in any evidence or pretext. And I believe I'm over my time. Thank you very much. Thank you. Thank you. We will proceed to the third and